# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ANTWAN ZEIGLER,                )
#281885,                       )
                               )   CIVIL ACTION NO. 9:14-1162-JMC-BM
                Petitioner,    )
                               )
v.                             )   **REPORT AND RECOMMENDATION**
                               )
DENNIS BUSH,                   )
                               )
                Respondent.    )
_____)

     Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed <u>pro se</u> on March 24, 2014.[1]

     The Respondent filed a return and motion for summary judgment on September 22, 2014. As the Petitioner is proceeding <u>pro se</u>, a <u>Roseboro</u> order was filed on September 23, 2014, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner thereafter filed a response in opposition on October 17, 2014.

     Respondent filed a motion to amend on October 30, 2014, which was granted, to correct a factual error in his brief.[2] This matter is now before the Court for disposition.[3]

---

[1] Filing date per <u>Houston v. Lack</u>, 487 U.S. 266, 270-276 (1988).

[2] Respondent had incorrectly identified Petitioner's co-defendant Troy Zeigler as his brother
(continued...)

1



**Procedural History**

Petitioner was indicted in Orangeburg County in July 2001 for murder [Indictment No. 01-GS-38-775]. (R.pp. 865-866). Petitioner was represented by Crystal Chapman, Esquire. On June 18-21, 2002, Petitioner was tried by jury together with his co-defendant, Troy Zeigler. Both Defendants were convicted. (R.pp. 1-706). Petitioner and his co-defendant were both then sentenced to forty-five (45) years confinement in prison. (R.p. 731). On June 27, 2002, Petitioner filed a "Motion to Impeach Verdict, Take Testimony of Jurors & New Trial". See Court Docket No. 25-4, pp. 90-93; No. 25-5. The trial judge issued a formal written Order denying the motion on September 27, 2002. See Court Docket No. 25-6.

Petitioner then timely filed an appeal of his conviction. On appeal, Petitioner was represented by Robert M. Dudek of the South Carolina Office of Appellate Defense, who raised the following issues:

1. Whether the trial court erred by refusing to direct a verdict of acquittal where there was not any direct or substantial circumstantial evidence that appellant killed the victim, and evidence appellant was in the general area of where the decedent later was found lying next to the road raised a mere suspicion of his guilt?

2. Whether the trial court erred by refusing to instruct the jury on "mere presence" since the judge's "hand of one is the hand of all" instruction did not adequately or clearly instruct that mere presence at the scene was insufficient to prove someone guilty of the crime?

3. Whether the trial court erred by refusing to grant a new trial or at least conduct a

---

[2](...continued)
instead of his cousin. See Court Docket No. 30.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

2



further inquiry of the jurors where the record revealed jurors wanted appellant to testify, and the defense presented evidence jurors did consider appellant's right to silence, a fundamental right, while reaching its guilty verdict?

<u>See</u> Court Docket No. 25-7, p. 3.

The South Carolina Court of Appeals heard argument on March 8, 2005, and issued an opinion affirming Petitioner's conviction and sentence on March 21, 2005. <u>See</u> Court Docket No. 25-9, pp. 1-17. On June 20, 2005, Petitioner petitioned for a rehearing, which the South Carolina Court of Appeals denied on August 26, 2005. <u>See</u> Court Docket No. 25-9, pp. 18-21, 27.

On November 17, 2005, Petitioner filed a petition for writ of certiorari in the Supreme Court of South Carolina raising the following issues:

1. Whether the Court of Appeals erred by holding that "mere presence" was adequately charged since the judge's "hand of one is the hand of all" instruction did not adequately or clearly instruct that mere presence at the scene was insufficient to prove petitioner guilty of the crime?

2. Whether the Court of Appeals erred by holding the trial court properly refused to grant a new trial or conduct a further inquiry of the jurors where the record clearly revealed jurors wanted petitioner to testify, and the defense presented evidence jurors did consider petitioner's right to silence while reaching its guilty verdict?

(R.p. 759).

On January 31, 2007, the South Carolina Supreme Court denied the petition. (R.p. 807). The South Carolina Court of Appeals then issued the remittitur on February 5, 2007. <u>See</u> Court Docket No. 25-10.

On December 10, 2007, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court; <u>Zeigler v. State of South Carolina</u>, No. 2007-CP-38-1666; raising the following issues:

**Ground One**: Ineffective Assistance of Counsel.

3



>**Ground Two**: Deficient Performance.
>
>**Ground Three**: Failure to prepare and trial strategy.
>
>Counsel fail to render reasonable effective assistance under the prevailing norms, which prejudiced applicant. The deficient performance of counsel[] to question the evidence and never informed applicant of any important developments . . .
>Counsel was deficient in the trial strategies that cause the conduct for poor performance. The strategy of counsel was not a legitimate decision regarding how to best represent the applicant . . . .

(R.pp. 810-811).

Petitioner was represented in his APCR by Glenn Walters, Esquire, and an evidentiary hearing was held on Petitioner's application on December 7, 2009. (R.pp. 820-857). In an order dated March 1, 2011 (filed March 7, 2011), the PCR judge denied relief on the APCR in its entirety. (R.pp. 858-864).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by David Alexander, Esquire, of the South Carolina Commission of Indigent Defense, who raised the following issue:

>Whether petitioner's Sixth Amendment right to counsel was violated by trial counsel's failure to move to sever his trial from that of his codefendant where petitioner's substantial rights were affected?

See Petition, p. 2 (Court Docket No. 25-11, p. 3).

On February 21, 2014, the South Carolina Supreme Court denied Petitioner's writ of certiorari. See Court Docket No. 25-13. The Remittitur was sent down on March 11, 2014. See Court Docket No. 25-14.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

4



**Ground One:** Whether trial court failed to grant a new trial based on juror misconduct.

**Supporting Facts:** During trial the Juror had more Sympathy for the witnesses and victim in this case and my failure to testify was considered by Jury and had a major impact on verdict with Juror Misconduct.

**Ground Two:** Whether Trial Counsel Was Ineffective For Failing To Move For Severance.

**Supporting Facts:** Counsel failed to move for a severance at trial when having me and co-defendant at trial was unconstitutional.

**Ground Three:** Whether Trial Court Failed to Grant Directed Verdict Motion Was Erroneous.

**Supporting Facts:** The State failed at trial to prove all elements beyond a reasonable doubt and trial errors are all what contributed to this verdict. Witnesses at trial recanted statements and state Forensic evidence and testimony do not corroborate states evidence.

See Petition, pp. 6-9.

By amendment on June 2, 2014, Petitioner also asserts:

**Ground Four:** Whether State Failure to prove guilt beyond a Reasonable doubt was based on juror misconduct.

See Court Docket No. 14, p. 1.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a



potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Ground Three)

Turning initially to Ground Three of his Petition, it is clear that Petitioner raises a direct appeal issue in this Ground which he did not properly fully pursue in his direct appeal proceedings. While Petitioner did raise this issue in his direct appeal to the South Carolina Court of Appeals, he abandoned this issue when he petitioned the South Carolina Supreme Court for writ of certiorari (even though that review was discretionary), thereby only preserving for review his other direct appeal issues. See (R.pp. 759, 807); Court Docket No. 25-7, p. 3; Court Docket No. 25-9, pp. 1-17; Court Docket No. 25-9, p. 27.[4]

Because Petitioner did not properly raise and preserve this issue in his direct appeal proceedings by failing to include it among the issues he chose to present to the State Supreme Court

---

[4]Petitioner's appeal to the State Supreme Court places this issue in a different posture than if this were a case where no petition for certiorari to the State Supreme Court had been filed after the Court of Appeals issued its decision. Under that scenario, because Petitioner is not required to file a petition for writ of certiorari, any issue raised before the Court of Appeals is preserved for review. State v. McKennedy, 559 S.E.2d 850, 854 (S.C. 2002). However, since the Petitioner in this case did choose to further pursue his direct appeal remedies and filed a petition of writ of certiorari to the South Carolina Supreme Court, only those issues presented to the State Supreme Court are preserved for further review, with any issues not set forth in the Petition to the Supreme Court being deemed abandoned. Otherwise, Petitioner would be able to seek federal review of an issue which he himself chose not to present to the State Supreme Court as part of his appeal of his conviction.



for discretionary review, it is barred from further state collateral review; <u>Whiteley v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560, 562 n. 3 (1971); <u>Wicker v. State</u>, 425 S.E.2d 25 (S.C. 1992); <u>Ingram v. State of S.C.</u>, No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); <u>Josey v. Rushton</u>, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); <u>Aice v. State</u>, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 735, n.1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288, 297-298 (1989); <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], <u>cert. denied</u>, 117 S.Ct. 854 (1997); <u>Aice</u>, 409 S.E.2d at 393; <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], <u>cert. denied</u>, 522 U.S. 833 (1997); <u>Ingram</u>, 1998 WL 726757 at **1.

However, even though exhausted by way of procedural default, because this issue was not properly pursued and exhausted on the merits by the Petitioner in the state court due to his failure to include it in his petition to the State Supreme Court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence.  <u>Martinez v. Ryan</u>, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316  (2012); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Waye v. Murray</u>, 884 F.2d 765, 766 (4th Cir. 1989), <u>cert. denied</u>, 492 U.S. 936 (1989).



> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Here, Petitioner has not shown, or even argued, any cause for his failure to properly pursue this issue in his state court proceedings. Therefore, Petitioner has failed to show cause for his procedural default of this claim. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]. Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if this claim is not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995). Hence, this issue is procedurally barred from consideration by this Court, and must be dismissed. Id.; see 28 U.S.C. § 2254.

Additionally, even assuming arguendo and for purposes of further discussion only, that the merits of this issue should be reached, it would still be subject to dismissal. Since this claim was adjudicated on the merits by the trial court and the state Court of Appeals, even assuming this claim is not otherwise procedurally barred from consideration, this Court's review of this claim is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme

8



Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v Jarvis, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1); see also Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001)[Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, in considering this claim, this Court must be mindful of this deferential standard of review.

Petitioner's claim that the testimony at his trial was insufficient to establish his guilt goes to the sufficiency of the evidence. While such a claim is cognizable on collateral review, a federal court's review of such claims is "sharply limited. Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998), cert. denied, 525 U.S. 1012 (1998) (quoting Wright v. West, 505 U.S. 277, 296 (1992)); see also Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir.1994)["The standard is obviously rigorous."] "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review". Wilson, 155 F.3d at 405-406 (citing Wright, 505 U .S. at 292). Further, a federal reviewing court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established; United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982); and when faced with all the evidence that allows conflicting inferences, this Court must presume that the jury resolved such conflicts in the state's favor. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Therefore, Petitioner is entitled to



relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. <u>Wilson</u>,155 F .3d at 406 (quoting <u>Jackson</u>, 443 U.S. at 324)); <u>see</u> <u>also</u> <u>George v. Angelone</u>, 100 F.3d 353, 357 (4th Cir.1996); <u>Bradley v. State</u>, No. 04-1278, 2005 WL 3475770 at *6 (D.S.C. Apr. 5, 2005). Reviewed pursuant to this standard, Petitioner's claim is clearly without merit.

At Petitioner's trial as set forth in the South Carolina Court of Appeals' order, the record shows,

> [Petitioner] accused [victim] of working for the police and told him he had to leave the trailer. [Petitioner] and [the victim] then "got into an argument." Thomas saw [Petitioner] throw a beer bottle at [the victim]. Larry Zeigler observed Troy and Eric Hallman hit [the victim]. George Zeigler stated he "thought that [Petitioner] . . thr[e]w a punch." When [the victim] attempted to leave, Troy and the Hallmans threw bottles at him. [The victim] ran out of the trailer onto . . . Road. Troy, [Petitioner], and the Hallmans pursued [the victim]. Approximately ten to fifteen minutes later, when Thomas, Larry Zeigler, and George Zeigler decided to leave the trailer, [Petitioner], Troy, and the Hallmans had not returned. As the three men left the trailer, Thomas noticed [Petitioner] and Troy walking back up the dirt road toward the trailer from about twenty feet away. At "the end of the road," Thomas, Larry Zeigler, and George Zeigler observed [the victim's] body lying motionless face down on the side of the road. Importantly, there was a specific window of about ten to fifteen minutes from the time (1) [The victim] ran out of the trailer; (2) he was chased by Troy and [the Petitioner]; (3) he suffered a severe beating; (4) Thomas saw [Petitioner] and Troy walking back up the dirt road toward the trailer; and (5) [The victim] was seen lying motionless on the side of the road. The pathologist confirmed [the victim] died "within minutes" from bleeding around the brain due to a beating. Later that night, at the Zeiglers' grandmother's house, Troy informed Thomas: "I kicked that nigger to death." [Petitioner] then stated: "He deserved it." Thomas noted Troy was limping and he thought Troy had a swollen toe.

<u>See</u> <u>State v. Zeigler</u>, 610 S.E.2d 859, 864-865 (S.C.Ct.App. 2005).

When the trial judge denied Petitioner's motion for a directed verdict, he specifically noted that the evidence included that the defendants left right after the victim did, came back without him, made statements to the affect that one of them kicked him, and that the Petitioner said he deserved it. (R.pp. 593-594). The trial judge then held that there was strong enough circumstantial



evidence to submit the case to the jury.  (R.p. 594).

"[I]n South Carolina, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his co-defendant[s] incidental to the execution of the common design and purpose."  Bradley, No. 04-1278, 2005 WL 3475770 at *6 (citing State v. Langley, 515 S.E.2d 98, 101 (S.C. 1999)).  Based on the evidence submitted at trial, the undersigned does not find that Petitioner has shown that no rational trier of fact could have found him guilty of murder.  Therefore, the undersigned can find no reversible error in the trial judge's refusal to grant a directed verdict on this claim based on this testimony and evidence, or in the state appellate court's upholding this decision on appeal.  Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell, 236 F.3d at 157-158;  28 U.S.C. §2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Wilson, 155 F.3d at 406 ["[A] federal court reviewing the sufficiency of the evidence on collateral attack must consider the evidence in the light most favorable to the prosecution and must presume that the jury resolved any conflicts over the historical facts in the [state's] favor."].

Hence, even assuming arguendo that this issue is not procedurally barred from consideration by this Court, it is without merit and should be dismissed.

## II.

### (Grounds One and Four)

In Grounds One and Four of his Petition, Petitioner argues that the trial court failed to grant a new trial based on juror misconduct and that the State failed to prove guilt beyond a



reasonable doubt based on this same juror misconduct.  Petitioner raised Ground One in his direct

appeal, and Respondent has addressed Ground Four as being substantially the same issue for purposes

of exhaustion.  See Respondent's Memorandum in Support of Summary Judgment, p. 13.

   In his direct appeal, Petitioner argued that the trial court erred in finding that he failed

to present any evidence regarding juror misconduct that would warrant sworn juror testimony or a

new trial.  The record reflects that, prior to returning the verdict, the jury had sent a note asking, "Is

it a possibility that the defendants go under oath and tell their side of the story?"  (R.p. 701).  After

counsel and the State presented their concerns about the note, the Court sent a note to the jury stating,

"No, we cannot receive new evidence at this time.  Please remember that you should not consider the

fact that defendants did not testify." (R.pp. 703-704).  After the jury returned its verdict of guilty, the

Defendants moved to set aside the verdict and for a new trial, or in the alternative, for a directed

verdict. (R.p. 715).  Specifically, counsel argued as part of that motion that,

> The jurors made it clear that they were considering things that you specifically
> instructed them not to consider when they sent out the note saying that they wanted
> testimony from the defendants.  Clearly, they were considering whether the defendants
> testified or not.  Obviously, when the verdict came back within twenty-three minutes
> of them sending out that note, where we responded that they were not to consider that
> and that we can't take additional testimony.  They've obviously taken the fact that
> they did not testify and held it against the defendants.

(R.pp. 715-716).

The Court denied the motion, and specifically addressed this issue as part of that motion, holding,

> Now, in regard to the last note that came out asking whether or not they could have
> the defendants testify, I don't think that's an indication that they didn't understand my
> charge or that they were violating the oath that they took.  I think it would be
> abnormal for a jury not to wonder what the defendants would say about a case.  That
> doesn't mean that they were back there discussing their failure to testify.  When I
> replied to them that we could not add to the evidence at this time, I added to that note
> to remember that they should not consider the fact that the defendants had not



testified.  And of course, over and over in my charge, and even before I, we drew the jury, in preparation of drawing the jury I told them that the defendants didn't have to testify and that the burden was on the state.  So, I think they fully understood that, and I don't think any additional instructions were necessary.

(R.pp. 718-719).

The undersigned can discern no reversible error in this ruling, as

> [t]he granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. <u>State v. Harris</u>, 530 S.E.2d 626, 627–28 (2000). The trial court is in the best position to determine the credibility of the jurors; therefore, this Court grants broad deference on this issue. <u>State v. Council</u>, 515 S.E.2d 508, 514 (1999).

<u>Cf.</u> <u>Vestry and Church Wardens of Church of Holy Cross v. Orkin</u>, 682 S.E.2d 489, 491 (S.C. 2009)[dealing with alleged juror misconduct on a motion for a mistrial]; <u>see also</u> <u>Carson v. CSX Transp., Inc.</u>, 734 S.E.2d 148, 152 (S.C. 2012)[granting or refusing a motion for a new trial is within sound discretion of trial judge and will not be disturbed absent an abuse of discretion].

At Petitioner's PCR hearing, Petitioner's trial counsel testified that the jury came back at some point during their deliberations and asked for the defendants to testify, and that it had become apparent in her opinion that the jury was not following the Court's instructions.  (R.pp. 846-847). Counsel further testified that after the trial someone contacted co-defendant's counsel about alleged improper discussions that had occurred in the jury room, and that she continued to investigate and got affidavits from the jurors.  (R.pp. 846-848).  Counsel testified that after she received the affidavits, [5] she filed a motion to set aside the verdict because she believed the affidavits showed inappropriate matters were considered by the jurors.  (R.p. 848).

---

[5]Although Petitioner's trial counsel refers to affidavits from the jurors, it is undisputed that there were no affidavits submitted to the trial court with any of the post-trial motions.  Rather, the only submissions were from the investigator's reports.  <u>See</u> Court Docket No. 25-6, p. 1(d).



After a hearing on the motions, the trial judge made the following findings: that 1) the defendants were each convicted of murder, after a trial by jury; 2) the jury was polled and each juror, without hesitation, said it was his or her verdict; 3) the attorneys for the defendants timely filed post trial motions; 4) the attorneys for the defendants asked private investigators to interview the jurors and gave them a list of questions for the jurors to answer; 5) the private investigators made contact with eight of the twelve jurors; 6) while no written statements or affidavits were obtained from the jurors, the court had access to the written reports made by each private investigator; 7) one juror would not discuss her verdict with the investigators; 8) two other jurors very clearly and unequivocally expressed that their decision was based on the evidence and the State proved its case; 9) another juror did say if the defendants had testified that it would have made a difference, but did not say what kind of difference it would have made because she did not know what they would have said, and the court found no evidence she based her decision on the Defendants' failure to testify and no evidence that she was pressured to vote guilty; 10) a different juror stated that the State proved their case and she  based her decision on the witnesses, she said she would have testified if  she had been on trial, but there was no evidence that played any part in her decision; 11) the next juror in the report based her decision on the evidence, said she was concerned that the defendants did not testify, but made that statement in response to a question about what they would liked to have heard.  The Court found that to be a perfectly normal response to that type of question; 12) the last juror in the report said that the State proved their case, that she thought the defendants should have testified, but did not say that she based her decision on their failure to testify; 13) there was absolutely no evidence of any outside influence or extraneous prejudicial information that would have affected the jury's verdict; 14) any discussion of the co-defendants, the Hallman brothers, was an internal matter that

14



did not create an issue of due process or fundamental fairness; 15) the jury did ask if the defendants could be placed under oath to testify, but in response to that question, the Court again instructed the jury that it could not discuss the defendants failure to testify and could not factor that into its verdict; 16) the evidence against the defendants was very strong and there was no evidence that the jury's decision was based in whole, or in part, on any improper considerations; and 17) based on the above findings, the court concluded as a matter of law that the jury verdicts should be affirmed. See Court Docket No. 25-6, pp. 1-2.

Petitioner appealed, and on March 21, 2005, the South Carolina Court of Appeals found that there was no juror misconduct that would warrant sworn juror testimony or a new trial. The Appeals Court noted that the trial judge found that no extraneous influence was present in the case and that Petitioner conceded that the misconduct alleged in this case was internal misconduct, that where the alleged misconduct is internal that the courts are more strict, the trial court gave a detailed charge to the jury instructing them not to consider the fact that the Defendants did not testify, the trial court reiterated this principle after receipt of the jury's note, the trial court considered the statements presented by the Defendants in their post-trial motions even though there were no affidavits or sworn testimony, the evidentiary record was devoid of the required showing in a case involving internal juror misconduct, and the trial court did not err in refusing to take sworn juror testimony and denying Petitioner's motion for a new trial based on allegations of juror misconduct. See State v. Zeigler, 610 S.E.2d 859, 866-868 (S.C.Ct.App. 2005). Petitioner next petitioned for rehearing, which was denied. See Court Docket No. 25-9. Petitioner then filed a petition for writ of certiorari in the Supreme Court of South Carolina raising this issue, and on January 31, 2007, the South Carolina Supreme Court denied the petition. (R.p. 807).



Again, the undersigned can discern no reversible error in the state courts' findings and conclusions. A statement such as a juror personally stating that he would have testified is not suggestive of an improper consideration of a defendant's failure to testify. <u>Gonzales v. Junda</u>, No. 12-3853, 2013 WL 2617679 at **3-5 (C.D.Cal. June 11, 2013)["To be sure, some of the jurors discussed the fact that Petitioner did not testify. However, the Ninth Circuit has held that a jury's discussion about a defendant's decision not to testify is 'part of the trial, not extrinsic to it.' <u>Raley v. Ylst</u>, 470 F.3d 792, 803 (9th Cir.2006). As such, reviewing courts are prohibited from inquiring into a jury's discussion of the defendant's decision not to testify."]. Further, "[s]ubstantial policy considerations support the common-law rule against the admission of jury testimony to impeach a verdict." <u>Tanner v. United States</u>, 483 U.S. 107, 119 (1987). Here, there is no evidence of extraneous influence, or impropriety in the process of not going through the give and take of jury deliberations. Therefore, there is no evidence which would provide for the allowance of jury testimony to impeach its verdict in the record or which would require a new trial. <u>Id.</u>; <u>cf.</u> <u>U.S. v. Rutherford</u>, 371 F.3d 634, 639-640 (9th Cir. 2004)[Finding juror's discussion of defendant's failure to take the witness stand inadmissible under Fed.R.Crim.P. 606(b)].

After careful review of the trial transcript, the notes at issue, arguments from the parties, and the relevant caselaw, the undersigned finds that Petitioner has not shown that the state courts' rejection of this claim was unreasonable. <u>Evans</u>, 220 F.3d at 312. Petitioner has not shown a violation of his rights, or any entitlement to federal relief based on this claim. Therefore, this claim should be dismissed.



### III.

### (Ground Two)

In Ground Two of the Petition, Petitioner contends that his trial counsel was ineffective for failing to move to sever his trial from his co-defendant's trial. Petitioner raised this issue in his APCR, where he had the burden of proving the allegations in his petition, as well as on appeal to the State Supreme Court. <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 1094 (1986); <u>see</u> <u>also</u> R.pp. 858-864. The PCR court rejected this claim, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See <u>Zeigler  v. State of South Carolina</u>, No. 2007-CP-38-1666.

Specifically, the PCR judge found that, with regard to Petitioner's claim for ineffective assistance of counsel for failing to move to sever Petitioner's trial from his co-defendant's trial that: 1) his co-defendant was represented by another lawyer in the Public Defender's office; 2) counsel opined in retrospect that she could have and possibly should have moved for a severance; 3) nonetheless, counsel articulated a reasonable basis for proceeding with the joint trial at the time; 4) counsel stated that at the time of trial, she did not see that the co-defendants had any conflicting defense to the point of needing to separate the trials; 5) counsel felt that trying the case jointly could strengthen the cases; 6) counsel's reasoning in making this decision was not outside reasonable professional norms; 7) moreover, Petitioner had failed to demonstrate prejudice from counsel's decision not to move for a severance; 8) there was no evidence that a severance was required in this case even if the motion had been made; 9) a motion for severance is addressed to the sound discretion of the trial court; 10) criminal defendants who are tried jointly for murder are not entitled to separate trials as a matter of right; 11) a severance should be granted only when there is a serious risk that a

17



joint trial would compromise a specific trial right of a co-defendant or prevent the jury from making

a reliable judgment about a co-defendant's guilt;   12) the trial court instructed the jury that guilt of

each defendant must be determined separately; and 13) Petitioner has pointed to no reason a

severance would be required.   (R.pp. 862-863).   The South Carolina Supreme Court denied

Petitioner's petition for a writ of certiorari in which he challenged the PCR judge's ruling.   See

Zeigler v. State, Appellate Case No. 2011-198348 (Order dated February 21, 2014)(Court Docket No.

25-13).

       Substantial deference is to be given by this Court to the state court's findings of fact.

Evans, 220 F.3d at 311-312 ["We . . . accord state court factual findings a presumption of correctness

that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell

v. Jarvis, supra.

       In a proceeding instituted by an application for a writ of habeas corpus by a person in
       custody pursuant to the judgment of a State court, a determination of a factual issue
       made by a State court shall be presumed correct.  The applicant shall have the burden
       of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531

U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

       However, although the state court findings as to historical facts are presumed correct

under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the

issue of ineffective assistance of counsel, a federal court must reach an independent conclusion.

Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th

Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th

Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, even with regard to the ineffective



assistance of counsel claim that was adjudicated on the merits by the South Carolina state court, this Court's review (as has previously been noted) is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, <u>supra</u>. <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].   Therefore, the undersigned has considered Petitioner's ineffective assistance of counsel claim pursuant to this deferential standard of review.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694.  In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Mazzell v. Evatt</u>, 88 F.3d 263, 269 (4th Cir. 1996).  As discussed hereinbelow, <u>infra</u>, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard.  <u>Smith v.</u>

19



North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Generally, severance is a question of state law not cognizable in federal habeas proceedings; see, e.g., Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir.2000) (citing Cummings v. Evans, 161 F.3d 610, 619 (10th Cir.1998)), cert. denied, 531 U.S. 938 (2000); and a defendant has no constitutional right to a severance unless he can make a strong showing of prejudice caused by a joint trial. Fox, 200 F.3d at 1292 (citing Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998)). Petitioner has failed to show any such strong showing of prejudice. Petitioner's counsel testified that they didn't see any conflict at the time of trial that would necessarily mean they needed to separate the co-defendants for trial, and that counsel actually thought they could strengthen each other's cases. (R.p. 855). The witnesses against the defendants were the same, and counsel testified that co-defendant's counsel and she used the same investigators and forensic crime scene specialists to prepare for trial. (R.p. 845). Petitioner's counsel testified that even when the statement came out that Petitioner's co-defendant had kicked the victim, that at the time it didn't seem like that big of an issue until, after the fact, someone said that he had broken his toe. (R.p. 856-857).

In his PCR appeal on this issue, Petitioner contended that a motion to sever would have been granted because the jury could not make a reliable judgment about Petitioner's guilt due to a lack of forensic evidence linking any of the four defendants to the crime, and that he was prejudiced because he did not have the opportunity to cross-examine his co-defendant when his co-defendant's statement implicated him because he was being tried under the "hand of one is the hand of all" theory of guilt. However, Petitioner presented no evidence to support this assertion. The trial court specifically instructed the jury that the guilt of each Defendant must be determined separately



and based solely on the evidence relating to that Defendant; (R.p. 668; <u>see also</u> R.p. 863); <u>cf.</u> <u>State v. Dennis</u>, 523 S.E.2d 173, 176 (S.C. 1999)[finding no prejudice from trials not being severed and discussing jury charge]; and the PCR Court found that Petitioner had failed to point to any reason why a severance would have been required and that there was no evidence that a severance was required even if the motion had been made.  (R.p. 863).

It is true that the constitutional right to cross-examination may be prejudiced from a joint trial when one defendant's confession *expressly implicates* another co-defendant but the confessor does not take the witness stand.  <u>See</u> <u>State v. Spears</u>, 713 S.E.2d 324, 329 (S.C.Ct.App. June 15, 2011)(citing  <u>Bruton v. United States</u>, 391 U.S. 123, 135-137 (1968)).  Here, however, Petitioner was not *expressly implicated* in his co-defendant's statement when witness Kenneth Thomas testified that "Troy [Petitioner's co-defendant] said, I kicked that nigger too death" and also read his earlier statement to the police into the record in which he stated, "Troy's right toe was broken." (R.pp. 477, 516).  Furthermore, Respondent points out that other testimony at trial indicated that Petitioner and his co-defendant acted together, which would have made severance not only unnecessary, but not practical.  For example, there was direct testimony that Petitioner accused the victim of working for the police, and threw a bottle at him before running outside with the co-defendant immediately before the beating that resulted in the victim's death.  (R.pp. 467, 477). Petitioner cannot show prejudice from merely being tried jointly with the person that he allegedly committed the crime with.  <u>See generally</u> <u>State v. Rutledge</u>, 198 S.E.2d 250, 251 (S.C. 1973)["The prejudice of which appellant complains was simply inherent in the facts of the case and not in the joint trial."]

Petitioner's mere speculation that if counsel had moved to sever the trial court would



21

have granted his motion, and that this would have affected the outcome of his trial, is insufficient on habeas review to show that his counsel was ineffective. While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in and after the fact manner. Id. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992); Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966), cert. denied, 385 U.S. 863 (1966); Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989), cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.]. Petitioner's mere speculation that he might have achieved a different result if he had been tried separately does not satisfy the "strong showing" of prejudice necessary to succeed on this claim. Fox, 200 F.3d at 1292 [Defendant has no constitutional right to a severance unless he can make a strong showing of prejudice from a joint trial]; Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus.]

Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable, or that his counsel was ineffective. Harris, 874 F.2d at 762 [An informed decision by trial counsel should not be second guessed by a reviewing court]; Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because its purpose] is to ensure that federal



habeas relief functions as guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction"]. This claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 3, 2015
Charleston, South Carolina

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

